# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALDRIDGE ELECTRIC INC., an Illinois Corporation, et al., ) ) ) | |
| ) | No. 04 C 4021 |
| Plaintiffs, ) ) | |
| ) | Judge Joan B. Gottschall |
| v. ) ) | |
| ) | Magistrate Judge Maria Valdez |
| FIDELITY AND DEPOSIT COMPANY OF ) MARYLAND, a Maryland corporation, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This is a breach of contract action concerning an insurance policy with a commercial crime rider issued by Defendant to Plaintiffs, which gives rise to allegations of dishonest conduct by plaintiff Aldridge Electric Inc.'s former employee, Evelyn Lopez. On November 7, 2005, Defendant originally issued a subpoena for deposition to Ms. Lopez under Rule 45 of the Federal Rules of Civil Procedure. At various depositions, Ms. Lopez, a non-party, refused to answer most questions posed to her by invoking her Fifth Amendment privilege against self-incrimination. Defendant brings the instant motion to compel her deposition testimony on grounds that Ms. Lopez has waived said privilege. [Doc. No. 60.]

## BACKGROUND

Ms. Lopez worked for Aldridge Electric Inc. from 1993 through 2003, where for many years therein she was responsible for the administration of the Aldridge Electric Inc. Profit Sharing Plan (the "Plan"). (Ex. A1 at 5, 6, 33.) By late 2003, however, the State of Illinois initiated criminal proceedings against Ms. Lopez for theft of Plan assets. (Def.'s Mot. Compel ¶ 3.) At both the April 17 and March 25, 2006, hearings on Defendant's motion to compel, counsel

for parties here and Ms. Lopez shared with this Court that in January 2004 she pled guilty to the state criminal charge in exchange for a reduced sentence and that she agreed to give a sworn statement to Aldridge Electric Inc. as part of this cooperation agreement.

Then on January 9, 2004, – months before the filing of this case – David Axelrod, representing Aldridge Electric Inc. and Ken Aldridge as trustee to the Plan, sat down with Ms. Lopez and obtained a lengthy sworn statement from her. Specifically, her January 2004 statement ran well over 100 pages in length (Ex. A at 2-130) and was given under oath (*id.* at 3). And, it covered a wide range of topics including, but not limited to: (1) her duties related to the Plan (*id.* at 6, 10, 11, 27, 30, 36, 40, 48-51, 63, 85, 122); (2) the names of her supervisors and authority they granted her (*id.* at 11, 15, 16, 43); (3) her knowledge of the Plan rules (*id.* at 20, 23, 26, 35, 47); (4) the timing, means, and camouflaging of her unauthorized loans and withdrawals of Plan moneys and circumvention of Plan rules (*id.* at 12, 18, 20, 23, 26-32, 34, 37, 38, 42, 44-46, 54, 55, 66-84, 86-91, 94, 97, 99-101, 104, 107, 108, 110, 111, 114, 119, 124-129); (5) why and how she spent Plan moneys (*id.* at 33, 34, 42, 80, 81); (6) her contacts with the Plan's third-party administrators and investment firms (*id.* at 13, 14, 18-20, 34, 35, 37, 41, 49-54, 56-63, 78, 104, 105, 107, 109-113, 117-129); (7) the awareness (of lack thereof) of supervisors and trustees regarding her actions (*id.* at 17, 19, 64); (8) her retention and discarding of paperwork related to her unauthorized loans and withdrawals (*id.* at 24, 25); (9) which withdrawals and loans were legitimate (*id.* at 25); and (10) audits of the Plan during her tenure (*id.* at 92, 93, 95, 101-103). After the sworn statement, Ms. Lopez was transported and confined to the Kankakee Minimum Security Unit (the "Kankakee facility") in Manteno, Illinois to serve out her state-imposed sentence. (Def.'s Mot. Compel. ¶ 3.)

Months later, Plaintiffs here commenced their breach of contract action against Defendant on June 14, 2004. [Doc. No. 1.] By November 2005, as part of its discovery efforts, Defendant caused a subpoena to be served on Ms. Lopez to take her oral deposition in connection to this civil action. (Def.'s Mem. 2.) This was followed by this Court's order granting Defendant leave to conduct the oral deposition of Ms. Lopez in prison pursuant to Rule 30(a)(2) of the Federal Rules of Civil Procedure. [Doc. No. 40.]

In compliance with the court order, the Illinois Department of Corrections ("IDOC") made Ms. Lopez available for deposition at the Dwight Correctional Center in Dwight, Illinois on December 20, 2005. (Def.'s Mot. 2.) At the deposition, however, Ms. Lopez refused to answer questions posed to her verbally (Ex. A at 4, 6-8, 11-12, 14), but agreed to authenticate the transcript of her January 2004 sworn statement (*id.* at 11, 13-16). Under oath (*id.* at 13), Ms. Lopez verified the accuracy of the January 2004 transcript (*id.* at 14, 16), declined to amend or correct the statements attributable to her (*id.* at 15-16), and agreed to submit to further deposition questions back at the Kankakee facility (*id.* at 14).

IDOC again made Ms. Lopez available for her continued deposition at the Kankakee facility on January 20, 2006 (Def.'s Mem. 2), but she refused to submit to written and/or verbal deposition questions (Ex. B at 3). Then on March 20, 2006, this Court ordered Ms. Lopez to appear for the continued deposition on or before April 17, 2006. [Doc. No. 55.] Upon receiving notice of the March 20 court order, Ms. Lopez corresponded with counsel for the parties in this matter and requested time to obtain counsel to represent her during depositions. (Def.'s Mem. 3.) In light of the parties' representation to this Court on April 12, 2006, – that Ms. Lopez was seeking counsel – out of an abundance of caution this Court set a status hearing for April 17, 2006, and ordered Ms. Lopez to participate telephonically. [Doc. No. 58.] At the April 17

3

hearing, no Fifth Amendment issues were raised and this Court ordered Ms. Lopez to submit to a continued deposition on April 28, 2006. [Doc. No. 59.]

Accordingly, IDOC made Ms. Lopez available on April 28, 2006, at the Kankakee facility (Def.'s Mem. 3), but Ms. Lopez indicated that her attorney, Michael Gillespie,[1] advised her to assert her Fifth Amendment privilege (Def's Mem., Ex. C at 14). Specifically, Ms. Lopez invoked her constitutional privilege and remained silent in connection to the following topics and lines of questions: (1) when and how she became involved with the Plan (*id.* at 18, 20); (2) who supervised her work related to the Plan (*id.* at 18-22); (3) what her roles, responsibilities, and authority were with respect to the Plan (*id.* at 19, 22-23, 29); (4) who the trustees of the Plan were during her time with Aldridge Electric Inc. (*id.* at 20); (5) the names of trustees with whom she closely worked (*id.* at 21); (6) whether administration of the Plan was left solely to her (*id.* at 22); (7) whether audits of the Plan were undertaken (*id.* at 28); and (8) all additional questions regarding the Plan (*id.* at 24, 28-30).

From the Kankakee facility, the parties advised the Court that Ms. Lopez refused to answer most deposition questions on the grounds of her privilege against self-incrimination, maintained collectively that she had waived her privilege, and sought an extension to continue the deposition. (Def.'s Mem. 4.) This Court granted the requested extension pending a full hearing on the Fifth Amendment issue.

---

[1] Mr. Gillespie was counsel of record for Ms. Lopez in a 2003 civil action filed against her by several of the plaintiffs here under the Employee Retirement Income Security Program ("ERISA"). (*See Aldridge Elec., Inc. v. Lopez*, No. 03 C 1372.) Mr. Gillespie admits to providing legal advice to Ms. Lopez on the matter now before the Court, but denies that he remains her attorney. However, an attorney-client relationship can arise when a putative client reasonably has relied on the lawyer to render legal services, including advice. *See, e.g., Restatement (Third) of the Law Governing Lawyers* § 14 (2000) (noting the attorney-client relationship can be triggered, in part, when "a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person," "the lawyer fails to manifest lack of consent to do so," and "the lawyer . . . reasonably should know that the person reasonably relies on the lawyer to provide the services"). The furnishing of specific legal advice in response to a question, without more, can constitute consent to representation regardless of the lawyer's subjective intent. *See id.*

4

On May 11, 2006, Defendant filed its motion to compel, arguing that Ms. Lopez's privilege should be deemed waived due to her prior sworn statement of January 2004 and her authentication of the statement on December 20, 2005. (Def.'s Mot. ¶ 7.) At the May 25, 2006, motion hearing, the Court entered and continued the motion to allow Ms. Lopez or the attorney advising her to respond officially to Defendant's motion. [Doc. No. 65.] At the next hearing, Mr. Gillespie was present at the request of the Court and asked for more time to confer with Ms. Lopez. The Court again deferred ruling on Defendant's motion to compel. [Doc. No. 66.]

By early-August 2006, Ms. Lopez was released from the Kankakee facility. On August 17, 2006, the parties, Ms. Lopez, and Mr. Gillespie appeared before this Court one final time. At this hearing neither Ms. Lopez nor Mr. Gillespie (on behalf of Ms. Lopez) filed any opposition to Defendant's motion. Nor did they make any argument or supplement the record in any way. [Doc. No. 67.] Having provided the deponent and her counsel with ample opportunity to oppose Defendant's motion and/or develop the record, this Court will now turn to address the arguments before it.

## DISCUSSION

Rule 26(b) of the Federal Rules of Civil Procedure instructs, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Thus, the concepts of relevance and privilege set the boundaries of allowable discovery.

As to relevance, Rule 26(b) further clarifies that "[r]elevant information need not be admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." *Id.* Here, the remaining questions for the deponent, Ms. Lopez, concern her past activities and communications as in-house administrator of the Plan. Such topics by no

5

means are attenuated to the breach (or lack thereof) of the insurance policy at issue in this case. Further, neither Ms. Lopez nor Mr. Gillespie (on her behalf) has challenged these question topics as irrelevant.

While discovery is broad, it nevertheless cannot tread upon a proper privilege. And of the various privileges available, the Fifth Amendment privilege against self-incrimination is one of the most important. *Kastigar v. United States,* 406 U.S. 441, 444-45 (1972) ("The power to compel testimony is not absolute. There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination."). This constitutional privilege "applies alike to civil and criminal proceedings," *McCarthy v. Arndstein,* 266 U.S. 34, 40 (1924), and "any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [an individual] in future criminal proceedings," *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973). Thus, deponents in civil actions are generally entitled to invoke their privilege against self-incrimination in the course of pretrial discovery.

The silence afforded under the Fifth Amendment, however, is far from absolute. *In re High Fructose Corn Syrup Antitrust Litigation,* 293 F. Supp. 2d 854, 859 (C.D. Ill. 2003). "Without question, the rights granted by the Fifth Amendment may be waived. But waiver 'is not to be lightly inferred.'" *Biom v. Quranic Literacy Inst.,* No. 00 C 2905, 2004 WL 2700494, at *2 (N.D. Ill. Feb. 9, 2004) (quoting *Klein v. Harris,* 667 F.2d 274, 287 (2d. Cir. 1981)). Here, Defendant argues that three factors support a finding of waiver: (1) the conviction of Ms. Lopez for theft before an Illinois state court; (2) her sworn statement that she gave to counsel for Plaintiffs; and (3) her reaffirmation of the content of that statement thereafter. (Def.'s Mem. 6.)

Ms. Lopez does not articulate how she may be faced with future additional criminal exposure if she was to submit to a deposition in this case. At the March 16 hearing on Defendant's motion, Counsel for Plaintiffs raised Ms. Lopez's possible criminal exposure at the federal level under ERISA. However, the Court notes that "[t]he right to assert the privilege in a civil suit does not depend on the likelihood of prosecution, but on the probability of prosecution." *Cent. States v. Carstensen Freight Lines, Inc.*, No. 96 C 6252, 1998 WL 413490, at *1 (N.D. Ill. July 17, 1998). Neither Ms. Lopez, nor her counsel, has argued that there is a likelihood (much less a possibility) of criminal prosecution under ERISA. This Court, however, need not make a determination as to the probability of criminal charges under ERISA or other criminal statutes. As set forth below, this Court finds that her right against self-incrimination is waived as to certain subjects.

It is true that "every reasonable presumption should be indulged" before finding waiver of a fundamental right, including the privilege of self-incrimination. *Walton v. Briley*, 361 F.3d 431, 433-434 (7th Cir. 2004). Furthermore, the Supreme Court has held that presumption of waiver from a silent record is impermissible. *Boykin v. Alabama*, 395 U.S. 238, 241-43 (1969) (including waiver of the privilege against self-incrimination). Here, however, the record is neither silent nor disputed.

At the April 17, 2006, motion hearing, Ms. Lopez offered that her January 2004 sworn statement was pursuant to her plea agreement with state prosecutors. Then at the May 25, 2006, hearing, counsel for the parties here also represented that Ms. Lopez's sentence was reduced upon her agreement to give the statement and Ms. Lopez herself added that she pled guilty as part of a cooperation agreement. Finally, after ample opportunity and repeated invitations by this Court, neither Ms. Lopez nor Mr. Gillespie, as her counsel, drew this Court's attention to any

7

portions of (or gaps within) the state record and/or other factors showing that her guilty plea and bargained-for statement thereafter was anything less than "intelligently and understandingly" made. *Boykin*, 395 U.S. at 242 (applying an "intelligent and voluntary" standard it had previously enunciated for waivers of right to counsel to other waivers of rights including the right against self-incrimination); *accord Colorado v. Connelly*, 479 U.S. 157, 168 (1986) (stating an individual may waive their right against self-incrimination if done "voluntarily, knowingly, and intelligently").

Since "federal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details," *Rogers v. United States*, 340 U.S. 367, 373 (1951) (citations omitted), this Court has no recourse but to compel Ms. Lopez to submit to a deposition by Defendant or face court sanctions. This Court finds that Ms. Lopez waived her right to self-incrimination by answering questions during her January 2004 sworn statement and reconfirming them voluntarily in December 2005. However, this Court does not find that Ms. Lopez has waived her privilege as to events and issues that fall outside of the scope of the topics and reasonably related details covered in her January 2004 sworn statement. *See, e.g., Garrison v. Nygren*, No. 00 C 50013, 2003 WL 21730132, at *3-4 (N.D. Ill. July 23, 2003) (limiting waiver of privilege to those topics previous revealed and no further).

Without further delay, Ms. Lopez is ordered to submit to Defendant's deposition. She is ordered to answer questions posed by Defendant if they relate to topics raised in her January 2004 sworn statement.

Finally, this Court notes that failure to abide by this order may give rise to additional consequences. "An ordinary witness who fails to appear for the taking of his or her deposition

8

after being subpoenaed is guilty of contempt." 8A Charles A. Wright, Arthur Miller, & Richard L. Marcus, Federal Practice & Procedure § 2107 (2d ed. 1994 and Supp. 2005). Under Rule 45 the "[f]ailure by any person without adequate excuse to obey a subpoena . . . may be deemed a contempt of the court . . . ." Fed. R. Civ. P. 45. Contempt may be either civil or criminal. *In re Grand Jury Proceedings,* 280 F.3d 1103, 1107 (7th Cir. 2002) ("A contempt order is considered civil if the sanctions imposed are designed primarily to coerce the contemnor into complying with the court's demands, and criminal if its purpose is to punish the contemnor, vindicate the court's authority, or deter future misconduct.") (citation omitted); *Thompson v. Cleland,* 782 F.2d 719, 721 (7th Cir. 1986) ("The same facts may give rise to both criminal and civil contempt . . . .").

## CONCLUSION

Defendant's motion to compel [Doc. No. 60] is GRANTED. Evelyn Lopez has waived her Fifth Amendment privilege against self-incrimination as to the topics she discussed in her January 2004 sworn statement and any reasonably related details or reasonable expansions on those topics therein raised. Accordingly, Ms. Lopez is ordered to submit to Defendant's deposition without undue delay and answer questions posed by Defendant consistent with this order or face future sanctions from this Court. Defendant is further ordered to provide Ms. Lopez with a copy of this order forthwith. A status hearing on this case will be held on November 1, 2006, at 9:30 a.m. at which time this Court expects that the deposition will have been completed.

**SO ORDERED.**

**Dated: August 31, 2006**

**ENTERED:**

_____
HON. MARIA VALDEZ
United States Magistrate Judge